UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SEAN CARDENAS | No. 21 CR 50007<br><br>Judge Iain D. Johnston |

**UNITED STATES' SENTENCING MEMORANDUM**

The UNITED STATES OF AMERICA, by JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, respectfully submits the following sentencing memorandum with respect to defendant SEAN CARDENAS.

**BACKGROUND**

The government adopts the facts as described in the Pre-Sentence Investigation Report ("PSR"), to include the facts contained in paragraphs 13 through 23, which describe the situation encountered by Rockford City Police Department (RCPD) officers and Rockford Fire Department officials (RFD) on the night that defendant busted through the front doors of Burlington Coat Factory, located at 6260 E. State Street, Rockford, Illinois, tossed a Molotov cocktail into the center of the store, and fled. PSR ¶¶ 14-20.

On the night of May 30, 2020, a large protest and demonstration took place in downtown Rockford in response to the murder of George Floyd, with many individuals congregating outside of RCPD District 1 on West State Street. Defendant was among these individuals earlier in the evening on May 30, however, he wanted to "make a statement" and made the conscious choice to travel approximately 7 miles

east and commit arson at Burlington Coat Factory store. PSR ¶ 21. Once at Burlington, defendant used his hands and a hammer to break through double glass doors of the business, leaving behind a trail of blood. Defendant was wearing a hood and a mask to conceal his identity and was equipped with a backpack he wore over his front side containing, amongst other items, lighter fluid inside of an Angry Orchard hard cider bottle, fitted with a wick. The surveillance footage from inside the store captures defendant as he stopped in the middle of the store, fumbled for a lighter, and then lit the Molotov cocktail before tossing it into the center of the clothing area. Three small, separate fires started, one which continued to burn, igniting a rack of clothing. At no time, did defendant look around to see if anyone was present inside the store (such as janitorial, maintenance or retail employees) and after starting the fire, defendant left the same way he entered—through the shattered front doors. It is by sheer luck that the fire extinguished without spreading further and devastating the entire building or storefront, or causing injury to any person. Defendant's actions threatened not only the retail establishment of Burlington Coat Factory, but also jeopardized the safety of the adjoining storefront businesses and possible occupants of PetSmart, the Dollar Tree, Dick's Sporting Goods and Schnucks Grocery. The defendant's crime was extremely serious and posed a significant risk of harm to the RCPD officers who were already dealing with a night enveloped by tense emotions.

**OBJECTIONS TO THE PRE-SENTENCE INVESTIGATION REPORT**

The government has no objections to the pre-sentence investigation report prepared by the United States Probation Department.

**SENTENCING GUIDELINES CALCULATIONS**

The government agrees with the Probation Officer's calculation of the sentencing guidelines. In this case, defendant faces a maximum sentence of 20 years imprisonment and a minimum sentence of 5 years imprisonment, pursuant to 18 U.S.C. §844(i). PSR ¶ 146. The calculated guideline imprisonment range is 60 to 71 months. PSR ¶ 147.

**UNITED STATES' SENTENCING RECOMMENDATION**

Section 3553(a) requires the Court to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing. 18 U.S.C. § 3553(a). Specifically, the Court must impose a sentence that is sufficient but not greater than necessary, "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(A)-(D).

In determining an appropriate sentence, the Court must consider, among other things, the nature and circumstances of the offense, the history and characteristics

3

of the defendant, the defendant's Sentencing Guidelines range, and the Sentencing Commission's policy statements. 18 U.S.C. §§ 3553(a)(1), (4), (5). Although the Sentencing Guidelines are only advisory, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States,* 552 U.S. 38, 49 (2007).

In determining an appropriate sentence for defendant, the Court should consider the important need for specific and general deterrence, just punishment and promotion of respect for the law, as well as rehabilitation of the defendant.

### A. Nature and Circumstances of the Offense

The government recommends the Court impose a sentence of 60 months in the Bureau of Prisons. Defendant's conduct resulted from a history of violent, assaultive, and anti-authority behavior which has been undeterred and for which defendant has demonstrated a lack of accountability. Following his arrest on the state charges, defendant told his mother in a recorded jail call, "I only burned a rack of clothes," yet the damage to Burlington Coat Factory is nearly $1 million dollars. PSR ¶ 22. At a time when RCPD officers and others were handling multiple calls across the city, defendant drew them into what was a dangerous and unknown scene. Entering through broken glass doors, finding a trail of blood and a hammer, the responding RCPD officer returned to his vehicle to retrieve a fire extinguisher and put out the fire inside the store. PSR ¶ 17. After the incident at Burlington Coat Factory, defendant sought medical treatment for injuries he sustained to his hand and

4

received stitches at the hospital. PSR ¶ 21. Defendant also went "live" on Facebook, stating that he couldn't really talk about what happened, but that it was "some dumb shit." Govt. Ex. B. As demonstrated by the restitution request in this case (to which defendant has agreed), there was a substantial financial loss incurred in this case. This loss does not account for the closure of Burlington Coat Factory from May 30 until re-opening later in the fall of 2020, laid-off workers, or lost-income during a time already complicated by the COVID-19 pandemic.

### B. History and Characteristics of Defendant

Defendant has not been deterred from his involvement in criminal activity despite the benefit of juvenile and adult probation. Since June 2016, defendant has been under the supervision of the criminal justice system. Nearly all of defendant's offenses and arrests involve violent and assaultive behaviors towards authority and parent figures, PSR ¶¶ 39, 41, 50; assaults on girlfriends, PSR ¶¶ 40, 42, 43; and even shooting a mail carrier, PSR ¶ 40. Defendant has been wholly unsuccessful at juvenile and adult probation and terms of pre-trial release, PSR ¶¶ 39-52 and continuously fails to appreciate the serious consequences of his criminal behavior. Defendant also has a significant number of concerning mental health diagnoses ranging from bipolar disorder and a history of self-harm, substance abuse, victimization, as well as self-disclosed sex addiction. PSR ¶¶ 89, 94, 101, 106-107 and 120. Also, this was not defendant's first fire-setting incident—the Department of Children and Family Services (DCFS) noted in records provided to probation that defendant had at least

two fire-setting incidents as a minor in 2011. PSR ¶ 99. Such diagnoses and patterns of behavior, while defendant may argue are mitigating, do not excuse defendant's criminal history and behavior. Defendant is on a catastrophic path that continues to endanger himself, others and now the public. The Sentencing Commission's 2022 Report on Recidivism of Federal Violent Offenders supports the need for a significant term of imprisonment for defendant to allow for deterrence and rehabilitation. The Sentencing Commission's analysis showed that "age and criminal history are consistently strong predictors of recidivism." At 22 years of age, defendant has acquired enough of a criminal record to place him in criminal history category IV. The Sentencing Commission report goes on to show that 79% of offenders between the ages of 21-29 recidivated and 67.4% of offenders between the ages of 30-39 recidivated. *See* United States Sentencing Commission, Recidivism of Federal Violent Offenders (February 2022) at 26, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2022/20220210_Recidivism-Violence.pdf (last visited July 12, 2022). A term of 60 months imprisonment, the mandatory minimum sentence in this case, will allow for defendant to engage in services and programs offered by the Bureau of Prisons that will be of great benefit to him, followed by the support and supervision of a term of supervised release.

6

## SUPERVISED RELEASE

The government requests that the court impose a term of three years supervised release. The parties will separately file a "Joint Submission on Conditions of Supervised Release" containing the parties' proposed agreements related to the specific conditions outlined on pages 34-40 of the PSR.

## CONCLUSION

For the reasons explained above, the government recommends that the Court sentence the defendant to a term of imprisonment of 60 months to be followed by three years of supervised release.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

BY: /s/ *Jessica S. Maveus*
JESSICA S. MAVEUS
Assistant United States Attorney
327 South Church Street, Suite 3300
Rockford, Illinois 61101
(815) 987-4444

## CERTIFICATE OF SERVICE

I, JESSICA S. MAVEUS, hereby certify that, on July 12, 2022, in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, N.D. Ill. Local Rule 5.5, and the General Order on Electronic Case Filing (ECF), the following document

### UNITED STATES' SENTENCING MEMORANDUM

was served pursuant to the district court's ECF system as to all ECF filers.

Respectfully submitted,

By: /s/ *Jessica S. Maveus*
JESSICA S. MAVEUS
Assistant United States Attorney
327 South Church Street, Suite 3300
Rockford, Illinois 61101
(815) 987-4444