```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                              WESTERN DIVISION

 3    UNITED STATES OF AMERICA,          )  Docket No. 21 CR 50007-1
                                         )
 4                       Plaintiff,      )  Rockford, Illinois
                                         )  Tuesday, July 26, 2022
 5       v.                              )  1:30 o'clock p.m.
                                         )
 6    SEAN CARDENAS,                     )
                                         )
 7                       Defendant.      )

 8                          TRANSCRIPT OF PROCEEDINGS
                      BEFORE THE HONORABLE IAIN D. JOHNSTON
 9
       APPEARANCES:
10
       For the Government:          HON. JOHN R. LAUSCH, JR.
11                                  (327 South Church Street,
                                     Rockford, IL  61101) by
12                                  MS. JESSICA S. MAVEUS
                                    Assistant U.S. Attorney
13
       For the Defendant:          LAW OFFICES OF ROBERT M. FAGAN, LTD
14                                 (10 North Galena,
                                    Suite 210,
15                                  Freeport, IL  61032) by
                                   MR. ROBERT M. FAGAN
16
       Also Present:               MS. TORI POWELL
17                                 Probation Office

18     Court Reporter:             Heather M. Perkins-Reiva
                                   327 South Church Street
19                                 Rockford, Illinois  61101
                                   (779)772-8309
20

21

22

23

24

25
```

1           THE CLERK:  21 CR 50007-1, *USA v. Sean Cardenas*.

2           THE COURT:  All right.  Let's get appearances for the

3   record.

4           MS. MAVEUS:  Good afternoon, Your Honor.  Jessica

5   Maveus for the United States.

6           THE COURT:  Good afternoon, Ms. Maveus.

7           MR. FAGAN:  Good afternoon, Judge.  Robert Fagan on

8   behalf of Sean Cardenas.

9           I would like to thank the Court for allowing me to

10  remain seated.

11          THE COURT:  You're welcome.

12          Good afternoon, Mr. Fagan.

13          MR. FAGAN:  Do you want Mr. Cardenas to be at the

14  podium or next to me?

15          THE COURT:  He can stay there with you for now.  I

16  will swear him in from that location.

17          Hold on one second here.

18    (Brief pause.)

19          THE COURT:  Ms. Maveus, are you ready to proceed?

20          MS. MAVEUS:  Yes, Your Honor.

21          THE COURT:  And, Mr. Fagan, are you ready to proceed?

22          MR. FAGAN:  Yes, Judge.

23          THE COURT:  All right.  Mr. Cardenas, are you ready

24  to proceed?

25          DEFENDANT CARDENAS:  Yes, Your Honor.

1        THE COURT:  All right.  I will need to swear you in,

2   so raise your right hand.

3     (Defendant duly sworn.)

4        THE COURT:  All right.  So we are here for the

5   sentencing.  There was a change of plea on March 18th, 2022,

6   at which time the defendant pled guilty.

7        Just to confirm, as a result of the guilty plea, the

8   statutory maximum term of imprisonment is 20 years; the

9   minimum statutory term of imprisonment is five years; the

10  maximum statutory fine is $250,000; the maximum supervised

11  release is five years; and then restitution, I want to confirm

12  this with counsel, is $965,591.54.

13        Is that your calculation, Ms. Maveus?

14        MS. MAVEUS:  Yes, Your Honor.  That comprises

15  $550,000 owed to Burlington Coat Factory, $227,309.22 to

16  Cushman and Wakefield, and $187,808.32 to Highlands Reit in

17  care of their insurance company, FM Global.

18        THE COURT:  All right.  Mr. Fagan, is that your

19  calculation for the restitution amount?

20        MR. FAGAN:  Yes, Judge.

21        THE COURT:  And is that also your understanding of

22  the maximum statutory penalties?

23        MR. FAGAN:  Yes.

24        THE COURT:  All right.  Thank you.

25        Let me tell you what documents I have and that I have

4

 1    reviewed.

 2              Obviously, there is the presentence investigation

 3    report provided by probation.  Attached to that is the plea,

 4    the government's version, victim statements.

 5              I also have the United States' sentencing memorandum

 6    that's docket entry 42.

 7              For the record, the PSR is docket entry 40.

 8              And then I have the sentencing memorandum that was

 9    provided by Mr. Fagan on behalf of Sean Cardenas that's docket

10    entry 43.  Attached to that filing are numerous -- I will call

11    them -- certificates.  There is also some letters, reference

12    letters, that were attached.  I didn't total them up.  There

13    is not a page number, but I will say there is several.  I have

14    that.

15              I also have the joint submission on conditions of

16    supervised release that was provided by both parties.

17              And then finally, I have been provided and I watched

18    two videos.  There is a Facebook video that was provided as

19    well as video recordings from a closed-circuit television at

20    Burlington Coat Factory.

21              Ms. Maveus, is that the universe of materials that

22    you have as well?

23              MS. MAVEUS:  Yes, Your Honor.

24              THE COURT:  All right.  Mr. Fagan, is that what you

25    have as well?

1            MR. FAGAN: Yes, Judge.

2            THE COURT: And you were provided with both videos in

3 discovery?

4            MR. FAGAN: Yes, sir.

5            THE COURT: Okay. And for the record, I should

6 mention we have a representative from probation here as well.

7            So that's all the documents I have and that I have

8 read.

9            Okay. Mr. Cardenas, if you remember, at the change

10 of plea, I mentioned that there would be a document prepared.

11 I have mentioned it a couple of times today. It is called the

12 presentence investigation report. It's a fairly extensive

13 report. It was prepared by the probation office after

14 Ms. Powell interviewed you and collected other information.

15            Have you had the opportunity to review the document

16 or talk to Mr. Fagan about it or have it read to you?

17            DEFENDANT CARDENAS: Yes, I have it with me right

18 now.

19            THE COURT: Okay. And, Mr. Fagan, have you had the

20 opportunity to review the report with your client?

21            MR. FAGAN: Yes, Judge.

22            THE COURT: Okay. I noted in the filings that there

23 were no written objections to the presentence investigation

24 report by the government; is that correct, Ms. Maveus?

25            MS. MAVEUS: That is correct, Your Honor.

 1          THE COURT:  Same for the defendant:  No written

 2   objections, Mr. Fagan?

 3          MR. FAGAN:  Yes, sir.

 4          THE COURT:  Okay.  And are there any verbal

 5   objections I need to hear now?

 6          MS. MAVEUS:  No, Your Honor.

 7          MR. FAGAN:  No, Judge.

 8          THE COURT:  Okay.  So the Court adopts the facts in

 9   the presentence investigation report as reliable and based on

10   detailed information.

11          Let's go through the guideline calculations as stated

12   in both the plea agreement and the PSR.  The offense level is

13   21.  We have a criminal history of IV.  It puts the guideline

14   calculations between 57 months and 71 months.  However,

15   because the statutory minimum for the offense is 60 months,

16   that puts the range between 60 months and 71 months.

17          Ms. Maveus, is that your calculation?

18          MS. MAVEUS:  Yes.

19          THE COURT:  And, Mr. Fagan, is that your calculation

20   as well?

21          MR. FAGAN:  Yes, sir.

22          THE COURT:  Okay.  All right.  Ms. Maveus, I did

23   mention that I saw attached to the PSR the victim statements.

24   Is there any other information I need as far as victim

25   statements go?

1          MS. MAVEUS:  No, Your Honor.

2          THE COURT:  Okay.  All right.  So, Mr. Cardenas,

3     what's going to happen next is I'm going to hear from the

4     government, I'm going to hear from Mr. Fagan, then hear from

5     the government again, and then you will have the opportunity

6     to speak.  You don't have to speak, and you need to know that

7     if you don't speak, I cannot and will not hold that against

8     you as any lack of remorse or for any other reason, okay?  So

9     that will be your choice.

10          So I will hear from Ms. Maveus first.

11          Go ahead, Ms. Maveus.

12          MS. MAVEUS:  Thank you, Your Honor.

13          For purposes of the record, the Court has already

14     acknowledged watching Government's Exhibit A, which was,

15     approximately, a 17-minute-long video exhibit comprised of

16     different views of surveillance video from Burlington Coat

17     Factory from the main entrance, which showed the defendant

18     breaking into Burlington Coat Factory approximately just

19     before midnight on May 30th of 2020, breaking in with his

20     hands, with a hammer, as articulated by the facts in the PSR

21     as well as the government's sentencing memorandum, exiting

22     that same entrance a couple of minutes later after tossing a

23     Molotov cocktail and setting fire inside of the store.

24          That Government's Exhibit A also portrays views from

25     the intimates department of the store, which shows the

1   defendant tossing that Molotov cocktail, three separate fires

2   igniting, one of which continues to ignite, then, a rack of

3   clothing and burn for several minutes until the internal fire

4   alarm of the store goes off, resulting in big black smoke

5   filling the retail establishment and big flames, and by sheer

6   luck, as noted in the government's sentencing memorandum,

7   isolating in one area of the store and not continuing to

8   destroy the entire store, although $550,000 worth of

9   merchandise within the store was destroyed.

10          Those same views also show Rockford City Police and

11  Rockford Fire Department responding, entering the retail store

12  through the broken glass doors, having to crawl through a

13  second set of doors because they couldn't unlock the doors,

14  and using fire extinguishers to put out the burning fire

15  inside of Burlington Coat Factory, and this all occurring the

16  night of May 30th when there were lawful protests and

17  demonstrations occurring in the city of Rockford, but other

18  incidents which were requiring police and fire attention

19  throughout the city.

20          So the government submits that the scene which

21  defendant attracted Rockford City Police to was quite

22  tumultuous the night of May 30th:  broken glass, blood on the

23  floor.  It was a dark environment, smoke filled, and the

24  officers themselves fortunately were able to extinguish the

25  fire.

1          That Government's Exhibit A also included a view of

2     the parking lot which showed the defendant running up to the

3     store.  The defendant was masked.  He was hooded.  He clearly

4     meant to conceal his identity, although the government is

5     certain he did not mean to leave behind his DNA or a backpack

6     which ultimately led to the identification of himself as a

7     suspect.

8          The Court has also acknowledged watching Government's

9     Exhibit B, which is an approximately a four-minute-long

10    Facebook video, and it portrays the defendant going live on

11    Facebook the next day, essentially showing off his injuries to

12    his hand, cuts that he sustained when breaking into the

13    Burlington Coat Factory to set that fire and for which he went

14    and sought medical treatment in a hospital, requiring

15    stitches.  I'm not going to play those videos.  Of course the

16    Court has watched them.  Defense counsel has watched them.

17         And I don't have any other witnesses, Your Honor, to

18    submit to the Court for consideration and would stand on the

19    arguments noted in the sentencing memorandum.

20         THE COURT:  All right.  Thank you, Ms. Maveus.

21         MS. MAVEUS:  Thank you.

22         THE COURT:  Mr. Fagan, give me one moment.

23    (Brief pause.)

24         THE COURT:  All right.  Mr. Fagan, any time you are

25    ready.

```
 1              MR. FAGAN:  Thank you, Judge.

 2              Judge, we are going to rely primarily on our

 3    sentencing memorandum and the fact that we agree with the

 4    government's recommendation that the Court sentence

 5    Mr. Cardenas to the mandatory statutory minimum.

 6              I would point out that Mr. Cardenas would be very

 7    pleased if the Court would recommend to the Bureau of Prisons

 8    either Pekin or Oxford, one of those two facilities, which are

 9    the two closest facilities, of course depending upon his

10    security classification.  And when the government has

11    completed its final statement, Mr. Cardenas does have a

12    statement he would like to read to the Court.

13              THE COURT:  Okay.  Thank you, Mr. Fagan.

14              Give me one moment.

15              You said Pekin or Oxford, correct?

16              MR. FAGAN:  Yes.  Thank you, Judge.

17              THE COURT:  Okay.  I just want to get it in my notes

18    so I don't forget it.

19              All right.  Anything else to add, Ms. Maveus?

20              MS. MAVEUS:  Nothing further to add, Your Honor.

21              I guess the only additional comment I would make that

22    we did not note in our sentencing memorandum, Mr. Cardenas had

23    some troubles in the jail disciplinary-wise.  I didn't make

24    note of that as it seemed, based on the attachments to defense

25    counsel's sentencing memorandum, hopefully, he turned that
```

1  behavior around as demonstrated by all of the certificates and

2  the programs, the bulk of which seemed to occur spring of this

3  year, shortly after his plea.  The government is hopeful that

4  that is indicia of Mr. Cardenas taking this seriously.

5          THE COURT:  All right.  Thank you.

6          MS. MAVEUS:  Thank you.

7          THE COURT:  That is an accurate representation of the

8  record before me is that there were incidents over at the

9  Winnebago County Jail that occurred, obviously, before today,

10  including at least -- well, there is two fights.  There is an

11  incident with a correctional officer about a mask and some

12  other things.  But Mr. Fagan did provide the Court, and they

13  are a part of the court record, the certificates of his

14  completion, and Ms. Maveus is correct, many of them occurred

15  in the spring of 2022 following the guilty plea.  So that is

16  an accurate representation.

17          All right.  Mr. Cardenas, again, you have heard the

18  statements of the government as well as the statements from

19  Mr. Fagan about your sentencing and recommendations as to your

20  potential sentence.  All defendants have the opportunity to

21  make a statement regarding their sentence.  You, like

22  everybody else, have the right to make a statement.  You also

23  have the right not to make a statement, and as I mentioned, if

24  you don't make a statement, I will not consider your decision

25  not to make a statement as a lack of remorse.  I will remind

 1    you, however, that you are still under oath.

 2          Mr. Cardenas, if you would like to make a statement,

 3    I will be glad to hear it, and I will take some notes.  So go

 4    ahead.

 5          DEFENDANT CARDENAS:  Your Honor, I'm embarrassed and

 6    disappointed in myself.  I have made countless choices in my

 7    life that I wish I didn't.  I have not only hurt myself in the

 8    situation, but I have hurt the owner of Burlington and my

 9    loved ones.  I have hurt the community as well.  I would like

10    to sincerely apologize to all those I have affected, and even

11    you, Your Honor, for putting another case in front of you and

12    making you and everybody here work harder than you wonderful

13    people have to.

14          I would like to say I have learned so much from this

15    situation, and I can say I'm a true son of God and a new young

16    man.  I would like to give a big thanks to John, Pastor John,

17    who is not here today, that wrote you a letter on my behalf,

18    who is guiding me through this tough journey these past few

19    months.

20          Your Honor, I came to jail blaming everyone but

21    myself.  Now I have come to realize that this is on me.  I

22    blamed all the wrong people.

23          Mom, I'm sorry for being --

24          THE COURT:  Take your time.  Don't worry about it.

25          DEFENDANT CARDENAS:  I have been a bad son.  I have

1    been hard to deal with.  I have been hard to deal with, and

2    you out of everybody got it the worst.

3            Your Honor, I have a daughter, and she will be four

4    in a few months.  Being without my baby has made me realize

5    what life has to bring when I come home and that is being a

6    better father.

7            And lastly, I would like to give a big apology to the

8    owner of Burlington.  You didn't deserve what I did to your

9    company.  I will do my absolute best to help restore what I

10   did to your place of business.  Sorry for taking what you

11   spent a lifetime building and trying to destroy it.  I hope

12   your business runs at its best.

13           Your Honor, this has taught me to be -- this has

14   taught me a valuable lesson and that is to cherish my freedom

15   and love and forgive my family and this country.

16           God bless.

17           THE COURT:  Thank you, Mr. Cardenas.

18           Okay.  Although I have broad discretion in sentencing

19   defendants, Congress requires that I impose a sentence

20   sufficient but not greater than necessary, and that's the key

21   phrase, "sufficient but not greater than necessary," to serve

22   the purposes stated in 18 USC Section 3553(a), and I must

23   consider the following general sentencing factors:  the nature

24   and circumstances of the offense, the history and

25   characteristics of the defendant, the kinds of sentences that

1    are available, sentencing commission policy statements, and

2    then the need to avoid unwarranted sentencing disparities.

3         The Court must also consider the need for any

4    sentence imposed to reflect the seriousness of the offense; to

5    promote respect for the law; to provide just punishment for

6    the offense; also to afford adequate deterrence, both general

7    and specific deterrence, to criminal conduct; to protect the

8    public from further crimes of the defendant; and then to

9    provide the defendant with needed educational or vocational

10   training, medical care, or other correctional treatment in the

11   most effective manner, and we are going to talk about that in

12   some detail later.

13        Mr. Fagan, again, I have read your material, and I

14   heard what you had to say today, and you do make the point

15   Mr. Cardenas has accepted responsibility as reflected by the

16   plea agreement.  You have provided the Court with the

17   information from the Winnebago County Jail as to the courses

18   that Mr. Cardenas has taken since we have had the change of

19   plea as well as noted -- and I will use your term, which is

20   charitable -- Mr. Cardenas' "challenging,

21   less-than-conventional life."

22        Mr. Cardenas, I appreciate your acceptance of

23   responsibility and your understanding of what you have done,

24   but there is things you don't have to apologize in life for.

25   You don't have to apologize to me for "taking up my time."  It

1    is my job.  So don't worry about that.  And you never have to

2    apologize for being the victim of cruel, despicable acts that

3    occurred to you, okay?  Nobody should have that done to them,

4    okay?  So you never have to apologize for that.  You learn

5    from them.  You grow from them.  But you never asked for those

6    things to happen to you.  You were a kid.  That's not your

7    responsibility.  That's somebody else's responsibility that

8    either did that to you or allowed that to happen to you.  So

9    that's not your fault.  So you always remember that.

10          And then, Mr. Fagan, you also mentioned that mercy

11   can also help promote respect for the law.

12          Mr. Fagan, have I addressed your major arguments?

13          MR. FAGAN:  Yes, Judge.

14          THE COURT:  Okay.  All right.  Obviously, the nature

15   and circumstances of the offense are serious.  It's arson.  It

16   is the use of a Molotov cocktail.  There is no good way to

17   commit arson, but throwing a Molotov cocktail in a store

18   that's essentially filled with clothing that is made of

19   petroleum products is going to cause problems, and thankfully

20   the fire did not get larger than it could have.

21          Ms. Maveus makes a good point that on that night, the

22   resources of the city of Rockford were spread very thin across

23   the community to try to keep the peace as best it could, and

24   those resources were distracted from other locations by the

25   defendant's offense.  So that's the nature and circumstances

1      of the offense.

2            The history and characteristics of the defendant, he

3      is 22 years old and already has a criminal history of IV.  A

4      lot of the criminal history points in his criminal history

5      stems from various acts of violence, including more than one

6      domestic violence.  I'm blocking on the girlfriend's name

7      here, but the abuse that she suffered was unforgivable.

8            But to Mr. Fagan's point is Mr. Cardenas'

9      challenging, less-than-conventional upbringing needs to be

10     considered.  I think by my count, there were no less than five

11     foster homes that Mr. Cardenas resided in after he left his

12     mother's guardianship and then was adopted by Mr. Tillman, who

13     did what he could do to the best of his abilities until he had

14     essentially reached his breaking point.  And a lot happened in

15     those years and not much good, and a lot of terrible things

16     happened as Mr. Cardenas was moved from one foster home to

17     another, and, again, those are things that nobody, nobody

18     should have to survive.

19           The kinds of sentences that are available both under

20     the statute and in guideline range -- and of course the

21     guidelines are advisory, not mandatory -- under the statute,

22     probation is not available.  The guideline range also

23     recommends against probation.

24           I have reviewed the policy statements of the

25     sentencing commission.  There is no co-defendant because

1    Mr. Lowery was not charged in this incident.  But as the

2    Seventh Circuit has noted, sentences within the guideline

3    range help ameliorate any sentencing disparities.  Again, the

4    seriousness of the offense is obvious.  There needs to be both

5    general and specific deterrence.

6          Mr. Cardenas, I'm sure you understand and you know at

7    that point that lighting a fire in the Burlington Coat Factory

8    is going to do nothing to promote the ends of social justice

9    in this country.  It does the absolute opposite because the

10   people who don't want social justice to be promoted point to

11   that incident as evidence why there shouldn't be social

12   justice.  So you are helping their argument.  I think you

13   understand that now.

14         I think Mr. Cardenas could use significant

15   programming support during his time in the Bureau of Prisons,

16   and we will talk about some of those things.  One of my

17   recommendations will be to see if we can get him into and I

18   will recommend that he is part of RDAP, the Residential Drug

19   Abuse Program, in the Bureau of Prisons.  It is one of the

20   most successful programs that the Federal Bureau of Prisons

21   operates.  It shows statistically significant positive effects

22   on recidivism.  I think that would help him.  I think some job

23   training, those types of things, would be very helpful, as

24   well as evaluations for various psychological conditions, and

25   then if the evaluations show that he needs treatment during

1    his time in BOP, he should receive those.

2          So I have considered, again, all the documents and

3    arguments from counsel, and I have considered the sentencing

4    guidelines and all the factors identified in Section 3553(a),

5    and I have considered the totality of the circumstances in

6    fashioning a sentence for Mr. Cardenas.

7          Both the government and defense have recommended

8    60-months term of incarceration.  That is the statutory

9    minimum.  I'm going to agree with that and sentence

10   Mr. Cardenas to a term of imprisonment of 60, 6-0, months.

11   Again, probation is not available.

12          I am not going to enter any fine, so no fine.

13          A special assessment is required of $100.

14          Restitution in the amount of $965,591.54 will be

15   entered as well as a term of supervised release of three

16   years.

17          Mr. Cardenas, let me explain to you what supervised

18   release is.  It's different than what was occurring over in

19   state court because our probation department's goal is to hope

20   that you succeed when you are released from the Bureau of

21   Prisons.  That's the goal.  Nothing personal, Mr. Cardenas,

22   but I don't want to see you again.  So if you comply with all

23   the conditions while you are on supervised release, I won't

24   have to see you again, and probation will provide you with

25   tools and resources to help you succeed after you are released

1    from the Bureau of Prisons.  So that's why I will impose these

2    conditions of supervised release.

3         There were no objections from either side, from the

4    government or the defense, as to the conditions of supervised

5    release, although the government did recommend one other

6    condition and that was discretionary condition 1.

7         So, Mr. Cardenas, if you recall, you have got that

8    presentence investigation report in front of you.  If you go

9    to page 34, I will just go through and tell you the boxes that

10   are checked, and those will be the conditions of your

11   supervised release, and, again, the term of supervised release

12   will be three years.

13        So for mandatory conditions of supervised release

14   that's on page 34:  Box 1 is checked and box 3 is checked.

15   Box 5 is checked.  Box 6 is checked.

16        And box 7 is checked on page 35.

17        MS. MAVEUS:  Box 5 is not checked.

18        THE COURT:  I'm sorry?

19        MS. MAVEUS:  Box 5 is not checked.

20        THE COURT:  It is not checked.  You are correct.  I'm

21   sorry.  Box 5 is not checked.

22        Box 6 and Box 7 are checked.

23        On page 35, under discretionary conditions of

24   supervised release:  Box 1 is not checked, but I will impose

25   that condition that he shall provide financial support to his

1   daughter, who is now four months old.  She will be about five

2   years old when you are released.  So you will be able to

3   financially support her to the extent you can once you are

4   released.

5          Box 4 is checked.  Box 6A, B, and D, "D" as in dog,

6   are checked.  Included in box D is that you shall refrain from

7   knowingly meeting, communicating, or otherwise interacting

8   with the following persons:  That includes the Burlington Coat

9   Factory, and I'm going to say it is Jaziah Lowery,

10  J-a-z-i-a-h.

11         On page 36:  Box 7 is checked.  Box 8 is checked.

12  Box 9 is checked, including box 9A, B, and C.

13         On page 37:  Box 14 is checked.  Box 15 is checked.

14  Box 16 is checked and that allows the probation officer to

15  visit you at your home between those hours, as well as at work

16  to verify your employment, or community service location to

17  verify your compliance with the supervised release conditions,

18  and then to allow the probation officer to confiscate any

19  contraband observed in plain view.  Box 17 is checked.  Box 18

20  is checked.

21         On page 38:  Box 23 is checked.

22         For special conditions of supervised release:  Box 1

23  is checked.  Box 5 is checked.

24         On page 39:  Box 6 is checked.  Box 7 is checked.

25  Box 8 is checked.  Box 9 is checked.  Box 9 is checked because

1   there is not another way of phrasing this.  I think you

2   understand, Mr. Cardenas, you have certain psychological

3   conditions that you recognize, and if you can get some sort of

4   counseling while you are in the Bureau of Prisons, that would

5   be great.  Once you are released from the Bureau of Prisons,

6   again, there will be an evaluation of you, and if programming

7   would help you in those issues, we will get you that.  Again,

8   the idea is to help you succeed.  So if those programs can

9   help you, we will make them available for you.  If you don't

10  need them, we are not going to make you do them because there

11  is no sense of trying to set you up for failure.  So that's

12  why box 9 is checked.

13          On the next page, page 40:  Box 10 is checked.

14  Box 11 is checked.  And then box 13 is checked, and box 13 is

15  the restitution.

16          So for recommendations, I will recommend, if

17  Mr. Cardenas meets the requirements, that he be provided with

18  the drug treatment, the Residential Drug Abuse Program.

19  Again, that's one of the most successful Bureau of Prisons

20  programs that exists.  I think that would be helpful.

21          We will recommend Pekin or Oxford as locations.

22          And then I will also recommend that Mr. Cardenas be

23  evaluated for any psychological needs, and if the evaluation

24  shows that he needs treatment, that he be provided with any

25  mental or psychological treatment to help him succeed both in

1   the Bureau of Prisons as well as upon his release.  And the

2   term, again, of supervised release is three years.

3        Mr. Cardenas, if you recall, when you changed your

4   plea, and in the plea agreement, you reserved two rights to

5   appeal:  One was the validity of your plea, and the second was

6   your right to appeal any sentence I impose.  You have those

7   rights.  So if you want to appeal those two things, you can.

8   You have that right.  But I need to notify you that if you

9   want to appeal, you need to file your notice of appeal within

10  14 days after judgment has been entered in your case, and if

11  you are unable to pay the cost of an appeal, you may apply for

12  leave to appeal -- what we call -- "in forma pauperis,"

13  meaning as a poor person, and if you request and qualify, the

14  clerk will arrange for legal representation and will prepare

15  and file the notice of appeal on your behalf.  Also, if you

16  cannot afford an attorney on appeal, you can ask for one and

17  one will be appointed for you.

18       All right.  Ms. Maveus, anything else on behalf of

19  the government?

20       MS. MAVEUS:  No, Your Honor.

21       THE COURT:  All right.  Mr. Fagan, any procedural

22  errors I can correct now?  Anything else I need to elaborate

23  on?  Anything I can correct, if I have made any mistakes

24  today, that we can resolve while we are all here today?

25       MR. FAGAN:  No.  Thank you, Judge.

1          THE COURT:  Okay.  All right.  Mr. Cardenas, I think

2     you know you have got some hurdles to overcome.  Do your best.

3     Again, the purpose of these conditions of your supervised

4     release is to help you succeed and give you support and

5     resources once you are released from the Bureau of Prisons.

6          I can't force the Bureau of Prisons to make you go

7     into programs, but they do have programs that are available.

8     That Residential Drug Abuse Program, again, is their best

9     program.  They also have vocational training.  Do what you can

10    while you are there.  Make the best use of your time.  And

11    that's the best I can offer you.  And good luck to you, okay?

12         DEFENDANT CARDENAS:  All right.  Thank you.

13         THE COURT:  All right.  Thank you.  Have a good day.

14      (Which were all the proceedings heard.)

15                         CERTIFICATE

16     I certify that the foregoing is a correct transcript from

17    the record of proceedings in the above-entitled matter.

18    */s/Heather M. Perkins-Reiva*              *January 18, 2023*

19    _____          _____

20    Heather M. Perkins-Reiva                    Date
      Official Court Reporter

21

22

23

24

25